(December 1, 1923.)

## F. J. McELROY, Respondent, v. CHARLES HELMER, Appellant.

[222 Pac. 290.]

RECLAMATION—SERVICE DITCH—INJUNCTION—CAREY ACT—STATUTORY
CONSTRUCTION—CONTRACT BETWEEN STATE AND IRRIGATION COM-
PANY—INSUFFICIENCY OF EVIDENCE.

    1. The provisions of the federal statute known as the Carey
Act are broad enough to sustain the contract between the state
and the Twin Falls North Side Land & Water Company, and
particularly that part of it which recites that "all water users
on lands irrigated from said canals or laterals shall have such
rights of way as may be necessary from the second party's canal
or laterals to their own land in order to construct and maintain
the necessary service ditches for their own use. . . . . "

    2. *Held,* that the evidence is insufficient to sustain the judg-
ment.

APPEAL from the District Court of the Eleventh Judi-
cial District, for Jerome County. Hon. T. Bailey Lee,
Judge.

Action to enjoin interference with the construction of a
service ditch. Judgment for plaintiff. *Reversed.*

J. H. Wise, for Appellant.

The right of the plaintiff depends wholly upon the provi-
sions of C. S., sec. 3029.

The ditch claimed by plaintiff was not established or ob-
servable on the property, nor was the ditch claimed by the
plaintiff marked upon any map of the department of recla-
mation, nor did the defendant have any notice or knowledge
of said ditch at the time of filing upon said land in 1911 and
subsequently acquiring patent from the United States and
from the state of Idaho. (*Feldhut v. Brumitt,* 96 Kan. 127,
150 Pac. 549; *Schurger v. Moorman,* 20 Ida. 97, Ann. Cas.
1912D, 1114, 117 Pac. 122, 36 L. R. A., N. S., 313; *White v.
Immeschuh,* 106 Kan. 333, 187 Pac. 667.)

E. M. Wolfe, for Respondent.

Every entryman takes his land with the knowledge that any other lands in that project which cannot be irrigated except through a service ditch crossing his land shall have the right of said service ditch. That right is not dependent upon the fact that the service ditch is already constructed over his land. The right is there, and whenever the lands need the service ditch it may be constructed. (C. S., sec. 3029; *Green v. Wilhite,* 14 Ida. 238, 93 Pac. 971; *Schurger v. Moorman,* 20 Ida. 97, Ann. Cas. 1912D, 1114, 117 Pac. 122, 36 L. R. A., N. S., 313.)

VARIAN, Commissioner.—Appellant is the owner and in possession of the SE. ¼ of the NE. ¼ of Sec. 33, and respondent is the owner and in possession of the SW. ¼ of the NW. ¼ of Sec. 34, all in township 9 south of range 20 east of the Boise meridian. Said tracts of land are contiguous and parts of the first segregation of the Twin Falls North Side Land & Water Company under the Carey Act. The record does not show that patent has issued to either of the parties.

The contract between the state and the North Side Land & Water Company was entered into, according to statements of counsel, in the year 1904. Appellant entered the lands belonging to him in the year 1911, and "proved up" in 1913. The controversy here arises over a service ditch which was laid out by the chief engineer of the Twin Falls North Side Land & Water Company and approved by the state engineer, prior to the commencement of this action on May 3, 1916. No appeal from the action of the engineers in laying out the service ditch in question was ever taken to the State Board of Land Commissioners. The service ditch in question was constructed over the lands of the appellant in the year 1917. The record is silent as to when the patent issued to the state or to the appellant; if patents have been issued, none appear in the record.

After the proposed ditch was staked upon the ground and approved by the state engineer, respondent attempted to

construct the same, but was prevented by appellant, and respondent brought this action to enjoin appellant from interfering with the construction of the service ditch. After a hearing upon an order to show cause, an injunction restraining such interference was issued, and pending the trial of the cause, respondent entered appellant's land and constructed the ditch from the North Side Land & Water Company's canal, across appellant's land, along the route staked by the engineer of said company, to the highest point on his own land.

It is admitted by the pleadings and found by the trial court that the State Board of Land Commissioners of the state of Idaho entered into a contract with the Twin Falls North Side Land & Water Company, whereby the said company bound themselves to construct a system of canals and irrigation works for the reclamation of the lands described in the first segregation of said company under the Carey Act, by which contract it was agreed and provided:

"The said party of the first part grants to the said party of the second part a right of way across all lands belonging to the State of Idaho, or that may be ceded to the State by virtue of the Act of Congress commonly known as the Carey Act, or by any other laws for the construction and operation of said canals, reservoirs and the distributing system therefrom and the necessary waste ditches, which right of way shall be equal to the actual width of the canal, lateral or waste ditch at its base, from toe to toe of the embankment, together with a strip of land along one side of such canal, lateral or waste ditch, and adjacent thereto, not to exceed 50 feet in width along the Main Canal and 30 feet in width along the laterals leading from said main canal and a proportionate width along the smaller laterals and waste ditches; said right of way to be located as designed by the Chief Engineer of the party of the second part and approved by the State Engineer, and in all cases to be sufficient for ingress and egress along said canal, lateral or waste ditch, in proportion as the necessity therefor exists, and all water users on lands irrigated from said canals or

laterals shall have such right of way as may be necessary from the second party's canal or laterals to their own land in order to construct and maintain the necessary service ditches for their own use, and such right of way across said lands as may be necessary for waste ditches. No reservoir, however, shall be constructed under the provision of this contract upon any portions of Sections Sixteen (16) or Thirty-six (36) without making compensation and complying with the laws of the State governing that subject. No more laterals, service or waste ditches shall be constructed across any premises than are necessary, in the opinion of the Chief Engineer of the Company and the State Engineer.

"The laterals, service and waste ditches shall be constructed under the direction of the Chief Engineer of the Company, and subject to his approval and the approval of the State Engineer. In case any land owner is dissatisfied with the location of any service ditch across his premises, he shall have the right to appeal to the State Board of Land Commissioners, whose decision shall be final. Detail maps showing the location of reservoirs, laterals and waste ditches constructed by the second party shall be filed with the Board and with the State Engineer, but such filing need not be made prior to the lands being thrown open for settlement."

There is no distinct enumeration of errors in appellant's brief, as required by Rule 42, but his theory seems to be that the provisions of the contract between the state and the Twin Falls North Side Land & Water Company, reserving rights of way for settlers' service ditches across the lands sold to entrymen, do not apply, and that respondent in this case should be compelled to obtain the right of way sought by condemnation proceedings under the eminent domain statutes.

The federal statute known as the Carey Act authorizes the state to make "all necessary contracts to cause said lands to be reclaimed, and to induce their settlement and cultivation in accordance with and subject to the provisions of this section." It provides that as fast as any state shall furnish satisfactory proof, according to such rules as the

Secretary of the Interior may prescribe, that any of the lands embraced in a Carey Act project are irrigated, reclaimed and occupied by actual settlers, patent shall be issued to the state, or its assigns, for the lands so reclaimed, etc.  (28 Stat. 422, sec. 4684, U. S. C. S.)

C. S., sec. 3014, provides that in cases where proof of reclamation and settlement has been made, the state will request patent for such reclaimed land to be issued to it by the United States.  When the government patent issues to the state, it then becomes the duty of the Department of Reclamation to notify the settler entitled thereto and issue a patent to him *from the state.*

The provisions of the federal statute above referred to are broad enough to sustain the contract between the Twin Falls North Side Land & Water Company and the state.  That contract expressly provides that "all water users on lands irrigated from said canals or laterals shall have such right of way as may be necessary from the second party's canal or laterals to their own land in order to construct and maintain the necessary service ditches for their own use . . . . "  Appellant's contract with the Twin Falls North Side Land & Water Company, or his application or other documents constituting his "entry," or patent from the state (if he has in fact received a patent) are not in evidence and their contents are not available here.  These are reservations made by the state, from whom the settler receives his title.

While C. S., sec. 3029, does not expressly mention service ditches, and seems to refer particularly to the main canals and distributing system owned by the company, it does not prohibit such a provision.  The state accepted the conditions imposed upon it by section 4 of the Carey Act, relative to the amount of land to be sold to each person, the disposition of surplus moneys arising from the sale of lands, etc.  (C. S., sec. 2996.)

It may be conceded that such a provision as that under consideration is virtually necessary in causing "lands to be reclaimed and to induce their settlement and cultivation," in the language of the federal act.  Otherwise, when

the first settled lands became very valuable, the cost of obtaining rights of way across them for service ditches might impede and deter the settlement and reclamation of the lands farthest from the distributing system of the project.

There is nothing in the record to show that appellant's entry, made in 1911 ("proved up" in 1913) was made subject to the provisions contained in the contract between the state and the Twin Falls North Side Land & Water Company. It cannot be assumed for the purposes of this appeal that the appellant had a contract with said company or that reference was had therein to the said contract between the state and said company.

While this court has said in *Schurger v. Moorman*, 20 Ida. 97, Ann. Cas. 1912D, 1114, 117 Pac. 122, 36 L. R. A., N. S., 313, that "It must, therefore, be considered that every person who deals with, or contracts in reference to any lands in this state reclaimed under the Carey Act of Congress and the acts of the legislature accepting the provisions thereof, does so with notice that easements and rights of way are granted through and over such lands both by the general government and by the acts of the legislature for the purpose of maintaining canals and conveying water through the same for the purpose of irrigating the lands lying under such canals," it then had under consideration the statutes granting rights of way for canals, etc. The question here relates to the right of way for a private (service) ditch.

The evidence is insufficient to sustain the judgment, and I therefore recommend that the case be reversed, with directions to grant a new trial.

McCarthy, William A. Lee and Wm. E. Lee, JJ., concur.

PER CURIAM.—The foregoing opinion is hereby approved and adopted as the opinion of the court. It is ordered that the judgment be reversed, with directions to the lower court to grant a new trial. Costs awarded to appellant.